**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT SANTIAGO,

    Plaintiff,

    v.

ARAMARK UNIFORM AND CAREER APPAREL, LLC,

    Defendant.

                                         /

No. C 12-04462 JSW

**ORDER DENYING MOTION TO REMAND AND SETTING CASE MANAGEMENT CONFERENCE**

**INTRODUCTION**

    This matter comes before the Court upon consideration of the Motion to Remand filed by Plaintiff Robert Santiago ("Santiago"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it HEREBY DENIES the motion to remand.

**BACKGROUND**

    Between 2003 and August 2010, Defendant, Aramark Uniform and Career Apparel, LLC ("Aramark") employed Santiago as a Commission Route Sales Representative ("CRSR") at Aramark's Hayward, California depot. (Notice of Removal, Ex. 1 (Complaint ("Compl."), ¶ 7).) According to Santiago, Aramark pays its CRSRs a "Weekly Commission" and guarantees them a weekly salary of no less than $675. (*Id.* ¶ 11.) Santiago alleges that Aramark "pays premium pay only if the guaranteed weekly salary plus the equivalent premium pay exceeds the Weekly Commission, but this almost never happens." (*Id.*, ¶¶ 11-12.)

//

Santiago also alleges that Aramark does not permit its CRSRs to take an uninterrupted meal thirty-minute meal period after no more than five hours of work and has no second meal period or rest breaks scheduled. "In addition, purely for its own business purposes, [Aramark] would unilaterally provide customers with after-the-fact price breaks, free services, and similar discounts that reduced the amount of commissions payable to" CRSRs, including Santiago, "causing a loss of earned wages." (*Id.* ¶ 12.)

Based on these and other allegations, on July 20, 2012, Santiago filed a complaint in Alameda County Superior Court on behalf of himself and similarly situated CRSRs. Santiago asserted seven causes of action, all premised on state law, for: (1) failure to pay premium pay (the "overtime claim"); (2) failure to pay all wages earned (the "unearned wages claim"); (3) failure to provide accurate itemized wage statements; (4) failure to provide meal periods (the "meal periods" claim); (5) failure to authorize and permit rest breaks; (6) violations of California's Unfair Competition Law; and (7) failure to pay wages upon termination. (*Id.* ¶¶ 24-72.)

Santiago and the putative class members are members of Teamsters Local Union No. 853, 624, and 315 (the "Union"). (Notice of Removal, ¶ 11; Declaration of Dennis Slipakoff ("Slipakoff Decl."), ¶ 3.) Aramark and the Union have entered into a series of Collective Bargaining Agreements ("CBAs"), which Aramark contends govern the wages, hours and working conditions of CRSRs. (Notice of Removal, ¶ 11; *see also* Slipacoff Decl., Exs. A and B.) On August 24, 2012, Aramark removed the action to this Court, and asserted that this Court has subject matter jurisdiction, because Santiago's overtime, unearned wages, and meal period claims are preempted by Section 301 of the Labor Management Relations Act ("Section 301").

The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.      Legal Standards Relevant to Removal Jurisdiction.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending."

2

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted); *see also* 28 U.S.C. § 1441. However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 382, 392 (1987). The well-pleaded complaint rule recognizes that the plaintiff is the master of his or her claim. "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Thus, under the well-pleaded complaint rule, federal-question jurisdiction arises where the "complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28. A court cannot exercise removal jurisdiction, however, on the ground that the complaint gives rise to a potential or an anticipated defense that might raise a federal question, even if the defense is the only question truly at issue in the case. *Id.* at 10, 14; *see also Caterpillar*, 482 U.S. at 393.

While a defense of preemption, also known as "ordinary preemption," is insufficient to demonstrate removal jurisdiction, "complete preemption," which is a corollary to the well-pleaded complaint rule, would be a sufficient basis for removal. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996). Under the complete preemption doctrine, the force of certain federal statutes is considered to be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Rains*, 80 F.3d at 344. Section 301 is a federal statute with such complete preemptive force. *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-562 (1968).

**B.     The Overtime Claim is Preempted By Section 301.[1]**

"Section 301 governs claims founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar,* 482 U.S. at 394 (quoting *Electrical Workers v. Hechler,* 481 U.S. 851, 859, n. 3 (1987)). However, mere consultation or reference to the collective bargaining agreement is not enough; preemption only results if resolution of the state-law claim requires the court to interpret the CBA. *Milne v. Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1409 (9th Cir. 1991). The preemptive force of Section 301 extends beyond suits alleging contract violations and encompasses suits which allege breaches of duties assumed in collective bargaining agreements. *Allis-Chalmers Corporation v. Lueck,* 471 U.S. 202, 211 (1985); *see also Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (Section 301 preemption will apply "even in some instances in which the plaintiffs have not alleged a breach of contract in the complaint, if the plaintiffs' claim is either grounded in the provisions of the labor contract or requires interpretation of it.").

The *Burnside* court set forth a two-part inquiry to determine if a plaintiff's claims are preempted. First, a court inquires "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.*, 491 F.3d at 1059. When the answer to this question is no, Section 301 preemption applies. If the answer is yes, the Court proceeds to the second part of the inquiry, whether the claim is substantially dependent on analysis of a collective-bargaining agreement. If the answer to that question is no, the claim is not preempted and the plaintiff may proceed under state law. If, however, the answer is yes, the claim is preempted. *Id.* at 1059-1060.

Aramark does not seriously dispute that Santiago's overtime claim involves a right conferred upon him by state law. *See* Cal. Labor Code § 510. However, Section 510 does "not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and

---

[1] Because the Court concludes the overtime claim is preempted, it does not address whether the remaining claims are preempted, because it can, and will, exercise supplemental jurisdiction over those claims.

4

1  if the agreement provides premium wage rates for all overtime hours worked and a regular
2  hourly rate of pay for those employees of not less than 30 percent more than the state minimum
3  wage." Cal. Labor Code § 514.

4  Aramark argues that, in order to determine whether the exemption provided in Section
5  514 applies in this case, the Court will be required to interpret the terms of the CBA,
6  specifically Section 11.2. In support of this argument, Aramark relies on *Firestone v. Southern*
7  *California Gas Co.*, 219 F.3d 1063 (9th Cir. 2000). In the *Firestone* case, the court concluded
8  that the plaintiffs' claims for failure to pay overtime were preempted, because the parties
9  disputed whether the compensation paid to the plaintiffs constituted premium wage rates.
10 *Firestone*, 219 F.3d at 1067. Santiago contends that, whether Section 510 or Section 514
11 applies, the only question at issue on this claim is whether Aramark pays CRSRs a premium
12 wage rate for all overtime hours worked.

13 The CBA contains the following provision regarding overtime pay:

14 A. For all Route Sales Representatives all time worked in excess of or outside of the regular work week shall be paid at the overtime rate of time and one-half of the flat salary rate of pay. The employer shall guarantee forty (40) hours of work per week. Overtime shall only be paid after forty (40) hours of work in one week.

17 B. Commission Route Sales Representatives shall receive the Weekly Guaranteed Salary plus one and one-half (1-1/2) times the equivalent hourly rate as overtime premium for all hours worked in excess of forty hours during the regular work week *if* the total exceeds weekly basis plus commissions due to be paid in the same week.

Commission Route Sales Representatives shall receive the greater of either their commission plus base paid pursuant to the relative provisions of this Agreement or the weekly guaranteed salary plus one and one half times (1 ½) the equivalent hourly rate for all hours worked in excess of forty (40) hours as overtime premium, whichever is greater.

24 (Slipakoff Decl., Ex. B (2009 CBA, § 11.2 (emphasis added)); *see also id.* (2009 CBA, § 8.2
25 (setting forth guaranteed weekly salaries and commissions for CRSRs).)

26 Santiago alleges that Aramark pays overtime only when the condition described in
27 Section 11.2.B occurs and "[i]n all other situations, ... does not pay *any* premium pay for
28 overtime worked," and alleges that he is not aware of any "instance where payment of the

5

guaranteed weekly salary plus the equivalent premium exceeded the Weekly Commission." (Mot. at 6:11, 6:16-17 (citing Compl. ¶ 11) (emphasis in original).) According to Santiago, the dispute is not over "*how* overtime rates were calculated but whether the *result* of the calculation complies with California law." *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1053 (9th Cir. 2003); *see also Andino v. Kaiser Foundation Hosp.*, 2011 WL 5883975, at *3 (N.D. Cal. Nov. 23, 2011) (concluding that claims were not preempted, notwithstanding defendant's invocation of Section 514, because although CBA provided for a "premium rate over the state minimum, the right to overtime pay" for all hours worked "is a state right, regardless of rate"); *Avalos v. Foster Poultry Farms*, 798 F. Supp. 2d 1156, 1163 (E.D. Cal. 2011) (concluding that claim for failure to pay overtime was not preempted, because issue was whether defendant compensated plaintiff and putative class members for time spent donning and doffing protective gear and, thus, paid employees for all hours worked).

Santiago does not claim CRSRs performed tasks for which they were not compensated and which would have resulted in a workday in excess of eight hours, thereby triggering a right to overtime and a dispute about whether Aramark paid its employees overtime for all hours worked. Rather, Santiago argues that, under California law, an amount of pay that does not fluctuate based on the number of overtime hours worked cannot be deemed to include 'premium' pay for the overtime hours worked." (Mot. at 6:3-6.) The Court agrees with Aramark that this raises a dispute about the method by which premium pay is calculated and whether the formula set forth in the CBA constitutes a premium wage rate. Thus, the Court finds the facts of this case are more closely analogous to *Firestone* than *Gregory*, *Andino* or *Avalos*, and it concludes the overtime claim is preempted by Section 301.

Accordingly, the Court DENIES the motion to remand.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion to remand. The Court HEREBY ORDERS the parties to appear for an initial case management conference on Friday, January 4, 2013.

6

The parties' joint case management conference statement shall be due by no later than December 28, 2012.

**IT IS SO ORDERED.**

Dated: November 19, 2012



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

Case3:12-cv-04462-JSW Document19 Filed11/19/12 Page8 of 8